486 So.2d 458 (1984)
Jerome Vincent BERARD
v.
STATE.
3 Div. 585.
Court of Criminal Appeals of Alabama.
July 31, 1984.
Rehearing Denied December 11, 1984.
*460 Ira DeMent and Ronald Wise, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and P. David Bjurberg and Edward Carnes, Asst. Attys. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant-appellant guilty of capital murder by intentionally killing two or more human beings by one act or a series of acts. He had pleaded not guilty and not guilty by reason of insanity. Soon after the verdict was returned and received, a hearing was conducted as to the weighing of the aggravating circumstances as opposed to the mitigating circumstances, and the same jury returned a verdict recommending that the death sentence be imposed. The trial court ordered a pre-sentence report, and in due course a sentence hearing was conducted that resulted in the trial court's acceptance of the jury's recommendation and the judgment sentencing defendant to death.
The victims of the alleged crime were Jeffery D. Smith, fourteen years of age, and John D. Thompson, sixteen years of age. The defendant was eighteen years old at the time of the crime, which occurred on April 15, 1978.
The trial of the instant case was from April 26, 1982, to May 2, 1982. The long interval between the date of the crime and the time of the trial that resulted in the judgment upon which this appeal is based is chiefly by reason of consequences of a previous trial of the same case, in which the jury had returned a verdict finding defendant guilty of the capital felony charged and had returned a verdict recommending the death penalty. In accordance with the verdict on the previous trial, the trial court rendered a judgment adjudging defendant guilty of the capital crime charged and sentenced defendant to death. On appeal to this Court, said judgment was affirmed on February 26, 1980, as to the judgment of conviction, but the case was remanded to the trial court as to the sentence, with directions that a new sentencing hearing be held. Berard v. State, 402 So.2d 1044 (Ala.Crim.App.). Meanwhile, before any further action was taken by this Court in the instant case, Beck v. Alabama, Ala., 396 So.2d 645 (1981), was decided, which necessitated a reversal of the judgment of conviction, as well as the sentence in the Berard case, for the reason that the jury was not permitted to return a verdict of guilt of a lesser included offense supported by the evidence, in contravention of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). On the return to the order of remandment on the former appeal of the former judgment of conviction and sentence to death of this appellant, the judgment of conviction and sentence were reversed and the cause remanded for a new trial, (Berard v. State, supra, at 402 So.2d 1051, June 23, 1981, rehearing denied, Aug. 4, 1981).
The opinion of this Court on the appeal of the previous judgment of conviction and sentence in the instant case, in Berard v. State, supra, sets forth a recital of the evidence, which needs not be repeated on this appeal, for the reason that there is little, if any, material difference between the evidence on the first trial and the evidence on the trial upon which the instant appeal is based. We will refer at times to evidence particularly pertinent to any and all issues presented on this appeal whenever the same seems appropriate to our discussion and determination of such issues, respectively.
Ten separate issues are presented in appellant's brief. Three of them pertain primarily to the issue as to the validity vel non of the judgment of conviction; most of the issues pertain primarily to the validity vel non of the judgment sentencing defendant to death; some tend to combine the issue as to the judgment of conviction with *461 the issue as to the judgment of sentence. We proceed to consider and discuss all ten issues separately, but we think it appropriate for us to defer discussion of the issues pertaining primarily or exclusively to the sentence of defendant to death until after we have discussed the issues presented by appellant that pertain in whole or in part to the judgment of conviction; however, we cannot do so without some tendency toward confusion of the reader if we observe the same sequence of their presentation in appellant's brief. Therefore, in our attempt to discuss each and every issue presented by appellant, we will do so in the following ten separately numbered divisions of this opinion in numerical sequence, but not in the same sequence, numerical or otherwise, of the issues presented in appellant's brief.

I.
Appellant makes a contention that is substantially the same, if not the identical, contention he made in this court on his appeal from the previous judgment of conviction and sentence, which contention was carefully considered and determined adversely to appellant in Berard v. State, supra, at 402 So.2d 1046, 1048. We adhere to what was there said and held, by concluding that the trial court was not in error in any of its rulings pertaining to the question of the admissibility in evidence of "color photographs depicting the deceased boys, allowing the jury to view color slides, color photographs of the deceased boys, shirts of the two deceased boys filled with bullet holes and covered with blood," as contended by appellant.

II.
By this issue, appellant expressly recognizes that in accordance with previous opinions of this Court, this Court would not if it could, and should not if it would, hold otherwise than what was held by the Alabama Supreme Court in Beck v. State, Ala., 396 So.2d 645 (1980), in holding that the Alabama Death Penalty and Life Imprisonment Without Parole Act in effect at the time of the alleged crime in the instant case, which contained a provision that precluded a verdict thereunder finding an accused guilty of a lesser included offense, could be saved from unconstitutionality by a severance of such preclusion clause by judicial action in prescribing that juries in such cases "will be instructed on each lesser included offense which has any basis in the evidence." Beck v. State, 396 So.2d p. 658. We need only add the following candid comment in appellant's brief:
"Defendant is aware that this Court is bound by the holding of the Alabama Supreme Court in Beck v. State, supra. Thus, he realizes that his conviction will not be reversed by this Court or the Alabama Supreme Court on this issue. However, the issue is presented here to preserve it for perspective [sic] federal habeas corpus review."

III.
By another issue presented by appellant, he challenges the action of the trial court "in not granting the appellant's challenge for cause as to juror No. 134 (Ms. Jenkins)." We quote verbatim appellant's recital of what occurred in the process of qualifying prospective jurors for service in the instant case:
"THE COURT: Can you tell us what you believe you know about this case from what you have read or heard, please, ma'am?
"PROSPECTIVE JUROR: Well, from what I have heard and read, saying that the person is guilty.
"THE COURT: Do you believe that the defendant in this case is guilty?
"PROSPECTIVE JUROR: Yes, I do.
"THE COURT: You don't believe that you could listen to the facts of the case and the law of the case and render your verdict on that?
"PROSPECTIVE JUROR: I believe I already have an opinion of him because he says he is guilty by reason of insanity.
"THE COURT: Do you mean not guilty by reason of insanity?

*462 "PROSPECTIVE JUROR: No, I believe he is guilty.
"THE COURT: Well, based on what you have heard and read?
"PROSPECTIVE JUROR: From what I have read and what I have heard.
"THE COURT: Do you not believe that you could put aside that opinion and render a verdict on the evidence of this case and the law of the case?
"PROSPECTIVE JUROR: Yes, possibly I could do that.
"THE COURT: Thank you, ma'am.
"(Prospective juror leaves the room).
"MR. WISE [Defendant's attorney]: Your Honor, we challenge her.
"THE COURT: What does the State say?
"MR. EVANS [District Attorney]: We'll defer, Judge, until you get through with all of them, and we would like to review them with you, if you would.
"THE COURT: Well, I'll put her on hold, but I think I will probably strike her. (R. 387-389).
. . . . .
"THE COURT: Ms. Jenkins, let me ask you a question. When we talked to you earlier, you indicated you had some thoughts about the guilt or innocence of the defendant in this case, I believe.
"PROSPECTIVE JUROR: Yes.
"THE COURT: You understand that he is presumed to be innocent in this case as he comes into this Court?
"PROSPECTIVE JUROR: Yes.
"THE COURT: And do you understand that the verdict can only be based on the evidence and the facts to be produced before the jury?
"PROSPECTIVE JUROR: Yes.
"THE COURT: Do you believe that you could listen to the evidence and determine it and apply the law in this case and put aside any notion that you might have about his guilty [sic] or innocence, or do you believe it is going to stay with you?
"PROSPECTIVE JUROR: I believe I could put it aside.
"THE COURT: All right. Thank you, ma'am.
"(Prospective juror leaves the room.)
"MR. WISE: Judge, on the lady who just left, number one thirty four, we challenge for cause on the grounds that even though she stated what she did, she still has a fixed opinion when that jury is put in the box.
"THE COURT: Is that number one thirty-four?
"MR. WISE: One thirty-four. She still has a fixed opinion.
"THE COURT: I deny you. (R. 430-432)."
Attorneys for appellant and appellee state their views pro and con respectively as to whether the denial of defendant's challenge of the prospective juror was error prejudicial to defendant. Beyond the writer's ability to explain is an entry in the record containing what purports to be a list of all the jurors from whom the jury to try the case was selected with the following typed thereon: "134 Lucille Jenkins" and to the reader's right thereof in pencil or pen is the legible legend "S16" signifying, it seems to us, that the lady was the sixteenth strike by the State and that there could have been no injury prejudicial to defendant in the action of the court in denying defendant's challenge for cause of said prospective juror. That the writer could be mistaken in this conclusion is not to be ignored, but we go further and decide that the trial court was not in error in overruling defendant's challenge for cause of the juror. This decision is in accord with Howard v. State, Ala.Cr.App., 420 So.2d 828, 831 (1982), and previous authorities cited therein.

IV.
The contention of appellant for a reversal now considered is based on a ruling of the court during the cross-examination by the State of Dr. Chester Jenkins, a psychiatrist, who testified at length on call of defendant as to the mental responsibility of the defendant. We quote in its entirety *463 an excerpt from such cross-examination found in appellant's brief:
"Q. Is he [defendant] capable then of having another psychotic episode?
"A. Certainly.
"Q. Not unlike the one you say he had on April the 14th and 15th of 1978?
"MR. DE MENT [Defendant's attorney]: Same objection.
"THE COURT: Overruled.
"Q. Sir?
"A. Do I think he is capable of having recurrent episodes? Yes, I do.
"Q. Recurring episodes, sir, let me ask you this: Is he capable of shooting somebody else?
"MR. WISE: Same objection, Your Honor.
"THE COURT: Overruled.
"Q. Again?
"THE COURT: While having a psychotic episode?
"Q. While having a psychotic episode? Sir?
"A. Yes, I think so. (R. 1325-1326)."
Appellant argues that such evidence was of no probative value and "was meant to inflame the passions of the jury and interject extraneous matters for their consideration as to the future acts of the appellant and was therefore violative of his rights under the United States Constitution." In the light of the entire transcript as to the issue of defendant's guilt or innocence, we are not persuaded that the challenged ruling of the trial court was erroneous. However, this particular issue is, we believe, a factor that deserves additional attention in connection with that part of the bifurcated trial by the jury dealing with whether defendant's punishment should be death as opposed to life imprisonment without parole, which phase of the case will be hereinafter addressed in this opinion.

V.
Appellant asserts that the trial court erred in denying defendant's motion for a new trial. He bases his contention upon alleged juror misconduct, consisting of (a) what a juror told other jurors during the deliberations of the jury as to defendant's guilt or innocence and (b) what other jurors were heard by the jury bailiff to have conversed about during the trial of the guilt or innocence phase of the case.
As to (a), appellant's brief contains the following:
"During the motion for a new trial, it was established that at least one juror during the deliberations discussed with the other jurors that life without parole did not mean that one could not escape. It is to be noted that this juror even stated that after informing the rest of the jury that just because one got life imprisonment without parole did not mean that one could escape, was the turning point in her deliberation. Further, this same juror even stated that one reason she voted the way she did, that is, guilty of a capital offense, was because the appellant did not prove his insanity beyond a reasonable doubt. As this court well knows, that is not the burden required of the appellant when the defense of not guilty by reason of insanity is injected."
Information as to what was said during the deliberations of the jury was furnished entirely by the testimony of one of the jurors engaged in the deliberations. Appellant's contention is disposed of adversely to him by the following part of the opinion by Judge Bowen, now Presiding Judge, in Atwell v. State, Ala.Cr.App., 354 So.2d 30, 38 (1977):
"... However the verdict may not be impeached by testimony of the members of the jury panel as to things said and done in the jury room. Hooks v. State, 45 Ala.App. 221, 228 So.2d 833 (1969). A juror may not testify to impeach the verdict as to how certain testimony was considered in the jury room. Harrison v. Baker, 260 Ala. 488, 71 So.2d 284 (1954). A juror cannot testify that certain evidence was or was not influential. The rule is that evidence of what a juror thought, or why he agreed to a verdict, may not be received to impeach the finding. *464 New Morgan County Building and Loan Ass'n v. Plemmons, 210 Ala. 286, 98 So. 12 (1923)."
As to (b), the bailiff testified on the hearing of the motion for a new trial in material part as follows:
"It's a two-part statement because when I walked up on the jurors, someone in the crowd made the statement, `Montgomery is lucky not to have people like Richard Speck.' And I stood there a few minutes to listen to see if anything was said that shouldn't have been said, which wasn't. The conversation
. . . . .
"A. Approximately three or four jurors.
"Q. Where were the rest of the jurors?
"A. Stacked out individually overlooking the balcony. It was a Thursday night and they were out getting some fresh air. Of course, it's a long corridor and we could see all of them, so ...
"The questionI mean, the statement was simply that Montgomery is lucky not to have people like Richard Speck. A couple of questions or statements were exchanged in there about how long I've been in law enforcement and stuff like that, would I be with them Friday night. And then someone asked me, said, oh, by the way, whatever happened to the man who stabbed the man in front of St. Margaret's Hospital?
"Q. Do you know what they were talking about?
"A. I knew what they were talking about.
"Q. What were they talking about?
"A. Well, that particular person was asking about David Canidate. They gave no names and I told them I did not know what happened to him. They said, I figure you worked along this detail, you would. And I said no, I don't. I know the Deputy that made the arrest, but I don't know what became of the case. I did, of course, but that was not for me to give them that information, and I did not want to linger on that subject.
"Q. What did you mean when you said that it was part of your detail; they thought that you may know something about the case?
"A. Since I worked the court detail, I am sure they would have athey were a very intelligent jury, and I am sure it wouldn't be hard to figure that out.
"Q. Were there any discussions you heard by the jurors dealing with the insanity defense in general?
"A. Never.
"Q. None whatsoever?
"A. None whatsoever."
It is obvious that the matter discussed by the jurors was extraneous to the subject of the instant case and did not constitute a conversation prejudicial to defendant.
The trial court did not err in overruling defendant's motion for a new trial based on the conversation among the jurors overheard by the bailiff.

VI.
By the first issue presented by appellant, he challenges the ruling of the trial court in granting the peremptory challenge by the State of a prospective juror on the ground that, in his answer to questions asked of him during the process of selecting the jury to try the case, the juror made it known that he had reservations against the imposition of the death penalty, but that, as contended by appellant, the prospective juror did not show such an attitude against capital punishment that met the standards for challenge for cause by the State that are set forth in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellee does not take issue with appellant's contention. It responds to it by asserting, "The case should be remanded to the trial court for further inquiry of" the particular juror. By this concession, appellee recognizes, and we agree, that we should not affirm the judgment sentencing the accused to death until we are able to determine whether the particular prospective juror met the standards set forth in Witherspoon v. Illinois, supra. Although neither party expressly contends *465 that a determination of the issue as to the granting of the State's challenge of the prospective juror was error prejudicial to defendant as to the judgment of conviction, as well as the judgment sentencing him to death instead of to life imprisonment without parole, we deem it appropriate to defer further discussion of this issue until after we have considered and discussed the remaining issues presented by appellant, numbered III, IV, VI and VII, which, with the exception of VII, pertain exclusively to the question of the validity of the judgment sentencing defendant to death instead of life imprisonment without parole. We now consider and discuss appellant's issues III, IV, VI, and VII in the order of their presentation, inter sese, in appellant's brief.

VII.
Appellant captions the third issue presented in his brief as follows:
"Whether or not the trial court erred in charging the jury during the sentencing phase of the proceedings that the intentional killings of two or more people was an aggravating circumstance for purposes of punishment and that as a matter of law, they had already found such to exist by returning a verdict of guilty all in violation of the appellant's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution?"
At the conclusion of a short argument on the issue, appellant states in a footnote:
"Appellant's counsel is well aware of Ex parte Kyzer, (Ala.[1981]) 399 So.2d 330. It is the appellant's contention that the holding in Kyzer, supra, as to this issue was wrong and the appellant is preserving said issue for prospective federal habeas corpus review."
We appreciate the admirable ingenuousness in preventing the writer from being led into a determination in conflict with the majority opinion of the Alabama Supreme Court in Ex parte Kyzer, supra, at 399 So.2d 339, as follows:
"... If Kyzer is convicted of the capital offense, the jury and the trial judge at the sentencing hearing may find the `aggravation' averred in the indictment as the `aggravating circumstance,' even though the `aggravation' is not listed in § 13-11-6 as an `aggravating circumstance.' The jury or trial judge, as applicable, will weigh the `aggravation' or `aggravating circumstance' against any mitigating circumstances in determining whether to impose the sentence of death."

VIII.
The fourth issue presented in appellant's brief is thus captioned:
"Whether or not the trial court erred in its order accepting the jury's recommendation that punishment be fixed at death by finding as an aggravating circumstance that the crime was particularly heinous, attrocious or cruel, that the defendant had intentionally killed two or more victims and not finding as a mitigating circumstance that the defendant was acting under the influence of extreme mental or emotional disturbance and/or that the capacity of the defendant to have appreciated the criminality of his conduct or to conform his conduct to the requirements of law were substantially impaired, thereby violating appellant's right to reliability in the capital sentencing process and to due process of laws guaranteed by the Eighth and Fourteenth Amendment to the Constitution of the United States?"
To assure a correct understanding of appellant's issue IV, we quote that part of the trial court's written "sentencing order pursuant to Alabama Code § 13-11-4" to which appellant's issue IV is directed:
"... The court is likewise convinced beyond a reasonable doubt that under the facts of the case sub judice, the capital offense was especially heinous, atrocious or cruel.
"The capital offense was especially atrocious inasmuch as it was senseless and committed for no apparent reason.2 [The material in footnote 2 and footnote 3 will be included in this quotation]. It was *466 heinous and cruel in the manner in which the homicides were perpetrated is torturous in that one can only imagine that albeit for, apparently, a brief moment each victim must have felt terror upon the realization of what was occurring. cf. Godfrey v. Georgia, 446 U.S. 420 [100 S.Ct. 1759, 64 L.Ed.2d 398] (1980) (dissenting opinion, White, J.). Finally, from an observation of the photographs and listening to the forensic testimony concerning the number and location of the initial wounds, it would seem death would be imminent, yet, it could be that the last bullet fired into the body of each victim took life from them, the court knows that was defendant's purpose.
"The court finds by a preponderance of the evidence that the defendant does not have a significant history of prior criminal activity acts (§ 13-11-7(1).3
"The defendant was eighteen years of age at the time of the homicides.
2"Defendant's counsel argues this as a mitigating circumstance because one may infer from this, together with other evidence, that the defendant was acting under the influence of extreme mental or emotional disturbance (§ 13-11-7(2)) and/or the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to requirements of law was substantially impaired. The court does not find that defendant met his burden on these issues. Moreover, the court notes there was no contention that the defendant was under the influence of drugs at the time of the homicides.
3"With respect to the defendant's use and purchase of drugs, see Cook v. State, 369 So.2d 1251, 1257 (Ala.1978)."
Although we are not fully in accord with appellant's contention in his brief that the finding made by the trial court that the "capital offense was especially atrocious inasmuch as it was senseless and committed for no apparent reason" should not be permitted to stand, we are not as favorably impressed therewith as we would like to be before placing the stamp of our approval upon the quoted statement of the trial judge. Furthermore, we think that such statement when considered with the fact that the trial court did not state in its finding that "the defendant was acting under the influence of extreme mental or emotional disturbance (§ 13-11-7(a))" etc., for the reason that the court "does not find that the defendant met his burden on these issues," tends to permit a conclusion that the trial court was proceeding on the theory that it was incumbent on the defendant to meet the same burden of proof test as to the punishment phase of the case as was upon him as to his defense of insanity on the guilt phase, that is, proving by a preponderance of the evidence the defense of not guilty by reason of insanity, as set forth in the opinion on the former appeal of this case, Berard v. State, at 402 So.2d 1049, and numerous other cases. It does not follow that the burden was upon the defendant to prove by a preponderance of the evidence that he was acting under the influence of extreme mental or emotional disturbance at the time of the crime in order for him to have the benefit of such mitigating circumstance at a hearing by the trial court of the issue as to whether defendant would be sentenced to death or to life imprisonment without parole. Although the defendant did not meet the burden of proof to the extent of satisfying the jury by a preponderance of the evidence as to his plea of insanity, it can hardly be maintained that there was not sufficient evidence presented to the trial judge to show that his mentality was so impaired that he was acting under the influence of extreme mental or emotional disturbance at the time of the crime. We cannot say, with reasonable certainty, that appellant's issue on the point is not well taken. We will keep it in mind as we proceed to consider the remainder of the issues presented by appellant.

IX.
By another of appellant's issues, (his sixth), he contends that the trial court was in error "in not allowing appellant's school records and photographs while growing up introduced into evidence at the punishment hearing." At the conclusion of the court's charge to the jury on the punishment phase of the case, the jurors were excused to go to the jury room and not to *467 commence their deliberations until they were advised that they could do so, and in the interim the court gave attorneys for the respective parties an opportunity to express any objections or exceptions to the court's oral charge. During that time, the following occurred:
"MR. DeMENT: One other thing, Your Honor. The moment the Deputy District Attorney started, I approached Mr. Evans and told him that I wanted to offer the school records and photographs of the Defendant, and I did not interrupt the argument. Mr. Evans suggested that I wait, and I waited. But, of course, I did not even approach him until after the argument began, so I don't want to mislead the Court. I want to offer them to the Court in extenuation and mitigation.
"MR. EVANS: To the Court for sentencing purposes?
"MR. DeMENT: No, to the jury on this sentencing hearing. They bear on Jerome's growing up and all the evidence adduced about his childhood, show his pictures. And we say that they are material and relevant at this stage, and we offer them for that purpose to the jury.
"MR. BROOM: Well, a picture of him in the first grade is not relevant. It's just used for sympathy of the jury.
"THE COURT: I understand your offer. I'm going to sustain the objection.
"MR. WISE: Your Honor, do I understand the Court is going to charge on life without the eligibility again?
"THE COURT: I am going to tell them one more time what the possible sentences are.
"MR. WISE: All right, sir. What I'm asking you is
"THE COURT: No, sir, I'm not going to go through all of that.
"MR. WISE: All right, sir, we except to the Court stating with eligibility of parole.
"MR. DeMENT: Would the Court state to them that there is no eligibility of parole
"THE COURT: The Court is going to tell them one more time the two possible verdicts, the two possible sentences are either death or life imprisonment without parole."
We are not persuaded that there is any merit in appellant's issue considered in this division of this opinion.

X.
Appellant's only issue not hereinbefore considered is stated in his brief as follows:
"Whether or not statements by the District Attorney and the Assistant District Attorney in the closing arguments in the guilt phase of the trial and the punishment phase of the trial were so prejudicial and improper as to violate the appellant's right to reliability and the capital sentencing process and due process of law as guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States."
As to this issue, we quote from appellant's brief his excerpts in their entirety from the transcript of the proceedings in which the targets of arguments of State's attorneys as to this issue are found. During the closing argument on the guilt phase of appellant's trial, the following occurred:
"MR. WILLIAMS [Assistant District Attorney]: The judge will also charge you that there should not be any consideration of sympathy in this case. And I want you to recall, too, when you consider your verdict in this case, just remember what Dr. Jenkins said. He said this man will kill again or could kill again
"MR. DeMENT [Defendant's Attorney]: Object to that argument.
"THE COURT: Overruled.
"MR. WILLIAMS: And you take that into consideration. Because there is only twelve people that can keep this from happening again.
"MR. DeMENT: Object to that argument and I will state my grounds at the appropriate time.
"THE COURT: Thank you, sir. Let's proceed (R. 1688).
"....

*468 "MR. EVANS [District Attorney]: And, again, the whole pattern of our entire civilization depends on whether or not you can be righteously indignant. Can you be? Well, my God, if you see this, you ought to be. And I say to tell the Jerome Berard's of this world that you are going to send the bell flag over this Courthouse all the way to Canada, Mexico, wherever it goes, that young dope addicts can't wipe out entire families and come in here with a stinking theory about insanity and ram it down your throat, and you smile and say that's it, let us go back in the jury room and turn him loose. No, I don't
"MR. DeMENT: Objection to the phrase turn him loose. Mr. Evans knows that is not what happens.
"THE COURT: Sustained.
"MR. EVANS: I don't thinkhe has a plea of not guilty, Your Honor.
"MR. DeMENT: Your Honor, I move the Court to instruct the jury to disregard that argument.
"MR. EVANS: He has a plea of not guilty in this.
"THE COURT: He does have a plea of not guilty.
"MR. DeMENT: He was talking about insanity. He is talking about it in the sense of insanity.
"THE COURT: In a sense that you might consider it to be referring to insanity, disregard it. (R. 1731-1732).
. . . . .
"MR. EVANS: He was so perverted and selfish in his need to experience some kind of high that he didn't care; he stole his daddy's heart attack medicine. And if he was out on one of his drinking, doped up sprees and the man grabbed his chest, and looked for his medicine, would he have found it? He would have died if they didn't get him to the hospital. That's the true character of Jerome Vincent Berard. A brutally, uncaring killer. And he's not insane.
"Another smokescreen is this latent schizophrenia. I wonder why the right honorable, charming Chester Jenkins from Opelika has not treated the defendant? If over several years ago he defined him as being a dangerous and sick person, why didn't he treat him? Is it because Jerome didn't have any money? Not with Dr. Jenkins. He would have you believe that he is up here in the highest calling of his profession to save a poor innocent person who thinks he's insane. If he thinks he's insane, why hasn't he treated him? He said he hasn't. Is it because he didn't have any doctors to go around and do it? If he's such a champion, surely he could. If he couldn't get somebody to send, he could write a letter to the jail. The truth of the matter is that it's a smokescreen. He didn't treat him because he has no disease. (R. 1734-1735).
"Further, during closing argument on the penalty phase of the trial, the following occurred:
"MR. EVANS: One final thing, weigh the aggravation and the torture. Weighing those scales, if you let no age and no record weigh those scales here (indicating) and you leave the first, second, third, fourth, fifth, sixth, seventh, all of those pistol shots and bullets taken from the bodies of those boys, you let that stay up here and lay it down because you have no age and no record, think about this: the precedent that will set
"MR. DeMENT: Your Honor, we object to that. That has absolutely no relevance.
"THE COURT: Sustained.
"MR. DeMENT: And move the Court to so instruct the jury.
"THE COURT: The jury will disregard it.
"MR. DeMENT: Move the Court for a mistrial.
"THE COURT: Overruled.
"MR. EVANS: One final thing. Will there ever be a case that is not appropriate for the death penalty? I ask you and urge you to look at Jerome Berard like he was the day he killed Bunkie Thompson. He has had the best our system can give him, and in return, the only sure *469 way for sure and certain that you know of that he will never kill another child in the bloom of youth is to put him in the death chair. That's the only way to be sure. Thank you. (R. 1881-1882)."
The tenor of much of the quoted argument of State's attorneys to the jury on each fork of the bifurcated trial was highly emotional. This, alone, is not enough to have made it improper. We are of the opinion that the trial court was correct in its rulings sustaining defendant's objections to some of the argument. The general theme of most of the argument quoted has often been found in what is generally considered as a dangerous area of trial advocacy, namely, whether a particular punishment would deter the accused from committing the same or similar crime in the future. It is an especially dangerous area in cases in which the sanity or insanity of the accused is an issue, and it is still more dangerous when the ultimate issue is whether the accused should be sentenced to death. The danger thereof in an effort to influence a jury to return a verdict that would lead to a sentence of death has been emphasized in several reported cases in Alabama, particularly in Boyle v. State, 229 Ala. 212, 154 So. 575 (1934); Eaton v. State, 278 Ala. 224, 177 So.2d 444 (1965); and Whisenhant v. State, Ala.Cr.App., 370 So.2d 1080, writ den., 370 So.2d 1106. (Ala. 1979). In considering authoritative cases on the point, it is worthy of note that most of them predated the abolition by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), of nearly all death penalties permissible under the then statutory law of Alabama and entirely all of such statutory law that provided for capital punishment at the discretion of the jury. The argument to the jury of counsel for the State during the first fork of the bifurcated trial was substantially the same as his argument during the second fork thereof. Nevertheless, we are convinced that any substantially harmful result thereof can be found only in the judgment upholding the advisory verdict of the jury recommending the death penalty. Whether it actually had a substantially harmful effect upon such verdict is probably not now material to a proper disposition of this appeal, as shown by the final conclusion herein reached.

CONCLUSION
The writer regrets his inability to conform the order of the divisions of this opinion to the order of the issues presented by appellant. He earnestly hopes his arrangement thereof is conducive to an assurance that consideration of each of the ten issues presented in appellant's brief is adequately given and to assure compliance with Rule 45A, Alabama Rules of Appellate Procedure, by which we are required in all cases in which the death penalty has been imposed to "notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant." Under A and B below, we summarize our views respectively as to whether the judgment of conviction should be reversed and as to whether the judgment imposing the death penalty should be reversed.

A.
There were some minor differences between the evidence on the first trial of this case and on the second trial of it, but there is not sufficient difference to enable us to reach a conclusion different from the following as found in this Court's opinion on the former appeal, Berard v. State, supra, at 402 So.2d 1049:
"During the course of the trial, there was considerable testimony concerning the appellant's mental condition. Both expert and lay witnesses testified on behalf of the State and the defense as to the appellant's sanity at the time of the commission of the crime. Without setting out the testimony of each witness, it is sufficient to say there was a conflict in the evidence. We find, however, that the testimony of the witnesses for the appellant did not constitute a `preponderance *470 of the evidence' that the appellant was legally insane at the time of the commission of the crime. In order to overcome the presumption of sanity, the appellant must prove by a preponderance of the evidence that he was in fact insane when the crime was committed. Christian v. State, Ala., 351 So.2d 623 (1977); Woods v. State, Ala.Cr.App., 364 So.2d 1178 (1978), cert. denied, Ala., 364 So.2d 1186. The determination against appellant on that issue was clearly within the province of the jury and was fully supported by the State's evidence."
We find nothing in the record proper or in the transcript of the proceedings that would justify our reversal of the judgment of conviction. No error prejudicial to defendant occurred as to the issues raised by his plea of not guilty and not guilty by reason of insanity. Although the evidence as to the issue raised by the plea of not guilty by reason of insanity was in sharp dispute, the issue as to his guilt raised by his plea of not guilty was correctly assayed by Judge Bookout in Bernard v. State, supra, at 402 So.2d 1045:
"The State's evidence proved beyond any reasonable doubt that in the early morning hours of April 15, 1978, eighteen-year-old Jerome Vincent Berard unlawfully, intentionally, and with malice aforethought killed Jeffery D. Smith and John D. Thompson, ages fourteen and sixteen respectively, by shooting them with a .45 caliber pistol at the Skatehaven roller skating rink in Montgomery. Both victims were employed by Skatehaven on the night in question, and Jeffery Smith was the appellant's best friend."

B.
The learned trial judge deserves tremendous credit for the outstanding ability, learning and judicial impartiality he demonstrated in presiding over this case from the beginning of the pretrial proceedings as to the last trial, throughout both hearings before the jury and the hearing of defendant's motion for a new trial. No other trial judge's rulings on so many difficult and important questions could hardly have run the gauntlet of appellate court review with any likelihood of better results. Nevertheless, in the performance of our responsibility, we find it necessary to conclude that the judgment sentencing defendant to death should not stand. We hereafter summarize our reasons for such conclusion.
As previously indicated in this opinion, we do not agree with that part of the trial court's order accepting the jury's recommendation that defendant's punishment be fixed at death, as hereinabove discussed under VIII (Appellant's Issue IV), in determining adversely to defendant the existence vel non of two mitigating circumstances prescribed by the then effective Death Penalty and Life Imprisonment Without Parole statutory law, specifically Alabama Criminal Code § 13-11-7(2) and (6), which state:
"Mitigating circumstances shall be the following:
"... (2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;
"... (6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;
"...."
If these two mitigating circumstances had been resolved favorably to defendant, the result would have been that a majority of the seven mitigating circumstances set forth in § 13-11-7 would have been resolved in his favor, as the trial court determined that the two other mitigating circumstances existed, namely, (1) "the defendant has no significant history of prior criminal activity" and (7) "the age of the defendant at the time of the crime."
In Berard, supra, at 402 So.2d 1051, it was held that the trial court's findings adverse to appellant as to mitigating circumstances described in § 13-11-7(2) and (6) were "tantamount to a holding that the degree of disability necessary to support those mitigating circumstances was lacking" and that the "trial court's findings *471 on those points were supported by the evidence, thus distinguishing the case from Lewis v. State, Ala.Cr.App., 380 So.2d 970 (1979)." We do not think that the same conclusion can be reached as to the finding made by the trial court as to the same statutorily defined mitigating circumstances, that "The Court does not find that defendant met his burden on these issues." The pertinent statutory law on the particular subject does not place any burden upon the defendant as to the point. It is worthy of note also that in the subsequent death penalty-life imprisonment without parole act, Acts 1981, No. 81-178, § 7, as codified by Criminal Code § 13A-5-45(g), the following is found:
"The defendant shall be allowed to offer any mitigating circumstance defined in sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence."
However preponderant the evidence as to the sanity or insanity of defendant, the evidence is extraordinarily strong that defendant's mentality was substantially below that of a normal person. The crime was correctly described by the trial court as "senseless and committed for no apparent reason." This specific finding stands in marked contrast, we think, to the conclusion of the trial court that the aggravating circumstances outweighed the mitigating circumstances and that the defendant should be sentenced to death. We come to the same conclusion reached in the per curiam opinion in Lewis v. State, Ala. Cr.App., 380 So.2d 970, 971 (1980), that:
"The capital felony conviction of the appellant is affirmed but the cause is hereby remanded for resentencing.
"....
"This court must independently weigh the aggravating and mitigating circumstances in a capital case. Neal v. State, Ala.Cr.App., 372 So.2d 1331 (1979), cert. den. Ala. 372 So.2d 1348 (1979); Rule 45, A.R.A.P. In doing so, we do not substitute our judgment for that of a jury in reviewing the sufficiency of the evidence. Kent v. State, Ala.Cr.App., 367 So.2d 508 (1978).
".... However, this court does not have statutory authority to reduce the penalty and resentence the appellant itself. That duty is vested in the trial court, § 13-11-4, Code of Alabama 1975, subject to our review on appeal. `The judgment of conviction and sentence of death shall be subject to automatic review as now required by law.' § 13-11-5, Code of Alabama 1975. [Emphasis supplied].
".... Another sentencing hearing is therefore mandated."
We conclude that this cause should be remanded with directions that the trial court conduct another sentencing hearing and, as was held in Berard v. State, supra, at 402 So.2d 1051, prior to the necessity for its reversal of the judgment of conviction on authority of Beck v. State, 396 So.2d 645 (Ala.1981), the trial judge shall consider the entire evidence presented at the trial before making his findings. Adequate notice shall be given to both parties of the time and place of the hearing, and the trial court will make a return to this order of remandment with notice thereof to the parties. Furthermore, as directed in Berard v. State, supra, at 402 So.2d 1051:
"... The appellant and his counsel must be present and be afforded an opportunity to present any matter in mitigation pursuant to Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Cook v. State, Ala., 369 So.2d 1251 (1979). In answer to the instant remand, a full court reporter's transcript of such proceedings must be made and forwarded to this Court along with the trial court's order which must include findings of fact as well as aggravating and mitigating circumstances, pursuant to § 13-11-4, et seq., Code of Alabama 1975."
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, *472 serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
HARRIS, TAYLOR and PATTERSON, JJ., concur.
BOWEN, P.J., concurs in result only with opinion. TYSON, J., joins with BOWEN, P.J.
BOWEN, Presiding Judge, concurring in result only.
I agree that this conviction should be affirmed and that this cause must be remanded for a new sentencing hearing because of errors in the trial judge's written findings of fact.

I
The trial judge found that the offense was "especially atrocious inasmuch as it was senseless and committed for no apparent reason" and that it was "heinous and cruel in the manner in which the homicides were perpetrated." The trial judge's reasons for finding this aggravating circumstance cause concern.
The fact that a killing is "unnecessary" cannot be used as an aggravating circumstance, Lewis v. State, 380 So.2d 970, 971 (Ala.Cr.App.1979). "In the sense that all killings are `unnecessary', that term hardly defines the term `especially heinous, atrocious and cruel.' ... That the killing was `unnecessary' can likewise not be used as an aggravating circumstance as it is not listed as such in § 13-11-6." Colley v. State, 405 So.2d 374, 389 (Ala.Cr.App.1979), reversed on other grounds, 405 So.2d 391 (Ala.1981).
In Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981), our Supreme Court held that in order to apply the aggravating circumstance that the crime was "especially heinous, atrocious or cruel", the trial judge must determine that this particular homicide was "materially more atrocious than any other intentional homicide" and that the homicide was "conscienceless or pitiless" and "unnecessarily torturous to the victim."
However, execution-type slayings may satisfy the requirements of the "especially heinous, atrocious or cruel" aggravating circumstance. Bryars v. State, 456 So.2d 1122 (Ala.Cr.App.1983). In Bush v. State, 431 So.2d 555, 560 (Ala.Cr.App.1982), affirmed, Ex parte Bush, 431 So.2d 563 (Ala. 1983), this Court held that "[e]xecution-type slayings evincing a cold, calculated design to kill, fall into the category of heinous, atrocious or cruel."
"[T]his capital offense was especially heinous, atrocious or cruel when compared to other capital offenses. Execution-type slayings evincing a cold, calculated design to kill, fall into the category of heinous, atrocious or cruel. Vaught v. State, 410 So.2d 147 (Fla.1982); Combs v. State, 403 So.2d 418 (Fla.1981); Armstrong v. State, 399 So.2d 953 (Fla.1981); Alvord v. State, 322 So.2d 533 (Fla.1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). We recognize that an instantaneous death caused by gunfire is not ordinarily a heinous killing. Odom v. State, 403 So.2d 936 (Fla. 1981). However, when a defendant deliberately shoots a victim in the head in a calculated fashion to avoid later identification, after the victim has already been rendered helpless by gunshots to the chest, such `extremely wicked or shockingly evil' actions may be characterized as especially heinous, atrocious, or cruel. Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978)." Bush, 431 So.2d at 560-61.
See also Ex parte Tomlin, 443 So.2d 59 (1983), where our Supreme Court was "not inclined to rule as a matter of law" that the capital offense was not especially heinous, atrocious or cruel where it was planned for over nine months, involved travel with a "hit man" from Texas to Mobile for the express purpose of killing one of the victims, and involved the killing not only of the intended victim but also of his fifteen-year-old *473 companion by shooting them in the back with a shotgun and a pistol.
It should be noted that in his confession Berard admitted that Smith and Thompson, the two victims, were "moaning and groaning" and in "misery" for a period of time after he shot them the first time.

II
The majority finds evidence of the mitigating factors that Berard was acting "under the influence of extreme mental or emotional disturbance", § 13-11-7(2), and that his "capacity ... to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired", § 13-11-7(6).
"Recent United States Supreme Court cases imply that courts should consider any mitigating circumstance supported by a scintilla of evidence." Colquitt, 33 Ala.L. Rev. 213, 311, The Death Penalty Laws of Alabama (1982). In Ex parte Clisby, 456 So.2d 105 (Ala.1984), our Supreme Court stated:
"In keeping with the dictates of the United States Supreme Court in Lockett v. Ohio, 438 U.S. [586, 98 S.Ct. 2954, 57 L.Ed.2d 973] 238 [1978], the sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Crim.App.1984), rev'd on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation."
"Although consideration of all mitigating circumstances is required by the United States Constitution, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. Lucas v. State, 376 So.2d 1149 (Fla.1979)." Smith v. State, 407 So.2d 894, 901 (Fla.1981). While the sentencer must consider all evidence presented in mitigation, he also determines the weight to be given to evidence of relevant mitigating circumstances. "The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982).
In Harrell v. State, 470 So.2d 1303 (Ala. Cr.App.1984), we noted that, although there may be some testimony or evidence which supports the existence of a mitigating circumstance, a trial judge may properly find that the defendant simply did not convince or persuade him of the existence of any mitigating circumstance. See also Hall v. Wainwright, 733 F.2d 766, 775 (11th Cir.1984) (Defendant's statements that he was "high" at time of killing, that he did not want anyone to get killed and that he was sorry were insufficient to compel Florida trial court, in capital penalty case, to find existence of mitigating circumstance of diminished capacity or extreme emotional disturbance); Cochran v. State [Ms. 6 Div. 886, April 24, 1984] (Ala. Cr.App.1984).
Even if the existence of these two mitigating circumstances is recognized, the reduction of the punishment from death to life imprisonment without parole is not necessarily required. Lewis, 380 So.2d at 977. Different sentencing authorities may assign different weights to the same aggravating and mitigating circumstances. *474 Moore v. Balkcom, 716 F.2d 1511, 1522 (11th Cir.1983).

III
In connection with the trial judge's failure to recognize the existence of the mitigating circumstances that Berard was acting under extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct was substantially impaired, the majority finds that the judge may have imposed too great a burden of proof. The evidence concerning Berard's mental state was in sharp conflict, with the opposing experts reaching different conclusions.
The judge found that Berard did not "meet his burden on the issues." Although some confusion may be generated by the judge's use of the word "burden", a comparable and valid argument can be made that the judge considered the evidence of these mitigating circumstances and found it unconvincing and of little weight.
"In any event, we may not speculate as to whether the trial judge ... actually considered all the mitigating factors and found them insufficient to offset the aggravating circumstances....Woodson [v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)] and Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)], require us to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court." Eddings, 102 S.Ct. at 878 (J. O'Connor concurring).

IV
I disagree with the majority's finding under Part IX that Berard's school records were properly not allowed in evidence at the punishment hearing. While I agree that the photographs were irrelevant, the decision of the United States Supreme Court in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), compels the admission of any relevant mitigating evidence.
"Evidence of a difficult family history and of emotional disturbance is typically introduced by defendants in mitigation. * * * [J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered in sentencing." Eddings, 102 S.Ct. at 876-77 (emphasis added).
Consequently, Berard's school records should have been admitted and considered.

ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
Each of the parties has filed a timely application for rehearing and a brief in support thereof.

APPELLANT'S APPLICATION
Under the caption "STATEMENT OF THE FACTS" in appellant's brief on application for rehearing is the following:
"Pursuant to Rule 39(k), Alabama Rules of Appellate Procedure, the appellant hereby requests that this Honorable Court add the following facts in its opinion on rehearing:"
Appellant's attorney then proceeds by twenty-seven pages in his brief to set forth the facts that he requests this Court to add "in its opinion on rehearing." We find no semblance of any dissatisfaction by appellant with the Statement of Facts contained in the opinion of this Court, which, it seems to us, gave an adequate coverage of the facts for a proper disposition of this case on appeal by its reference to the opinion on the previous appeal in this case, Berard v. State, Ala.Cr.App., 402 So.2d 1044. We stated and still believe there was "little, if any, material difference between the evidence on the first trial and the evidence on the trial upon which the instant appeal is based." As stated in our opinion on original submission of this appeal, we referred "at times to evidence particularly pertinent to any and all issues presented on this appeal whenever the same seemed appropriate *475 to our discussion and determination of such issues, respectively." We are of the opinion that a compliance with appellant's request would serve no useful purpose and would not come within the purpose or spirit of Rule 39(k).
By the first issue presented by appellant in his application for a rehearing, he contends that "the trial court erred in excusing Juror Lunsford contrary to the guidelines set forth in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) thereby violating the appellant's rights under the Sixth and Fourteenth Amendment to the United States Constitution." This is the same issue presented by appellant in his brief on original submission, as to which the appellee did not take issue but responded by asserting that "the case should be remanded to the trial court for further inquiry of" the particular juror. We did not understand then, and we do not understand now, that further inquiry of the particular juror would serve any legitimate or useful purpose unless we conclude that the judgment sentencing defendant to death should be affirmed. Therefore, we find it unnecessary to discuss each issue further, other than as we do so in considering appellee's application for a rehearing.
We have considered all issues presented by appellant in his brief on application for rehearing and continue to conclude that the judgment of conviction should be affirmed and appellant's application for a rehearing should be denied.

APPELLEE'S APPLICATION FOR A REHEARING
Appellee urges, as did appellant, that the question whether prospective Juror Lunsford was excused contrary to the guidelines set forth in Witherspoon v. Illinois, supra, should be resolved by remanding the case for further inquiry of Juror Lunsford. Appellee argues, "If the trial court resentences Berard to death after conducting the further sentence proceedings ordered by this Court, the Witherspoon issue will remain unresolved and another remand for further inquiry of the juror in question will be required." Appellee further argues, "Leaving the Witherspoon issue unresolved, as this Court has done, thus creates a very real risk of delay and unnecessary proceedings." Appellee is mistaken in assuming that we should anticipate that the trial court will resentence "Berard to death after conducting the further sentencing proceedings ordered by this Court." Appellee endeavors to connect this issue with the general theme of its brief on application for rehearing to the effect that the opinion is not clear as to what should be accomplished by the trial court at the resentencing hearing. Appellee states:
"From reading the opinion, the trial court judge will not be able to ascertain with certainty just what he is to do and how he is to do it. The most important question of allwhether the trial judge can resentence Berard to deathis not answered with sufficient clarity by the majority opinion."
Our answer is that the majority opinion, as well as the other opinion (a concurring one), in this case, is to the effect that this Court has clearly expressed its disapproval of a sentence to death in this case.
In following the per curiam opinion in Lewis v. State, Ala.Cr.App., 380 So.2d 970, 971 (1980), we concluded in our opinion on original submission that "the death penalty is not sustained by the evidence presented at the hearing on aggravating and mitigating circumstances" but that "this court does not have statutory authority to reduce the penalty and resentence the appellant itself." The duty of the trial court in the instant case is as clearly shown as was the duty of the trial court in Lewis v. State, supra, which conducted a resentencing hearing and rendered judgment sentencing appellant therein to life imprisonment without parole, which judgment was affirmed in Lewis v. State, supra, at 380 So.2d 980.
Both applications for rehearing should be overruled.
OPINION EXTENDED; REHEARING OVERRULED.
All the Judges concur except BOWEN, P.J., who dissents with opinion.
*476 BOWEN, Presiding Judge, dissenting.
I respectfully dissent from the majority opinion. Whether or not the confusion generated by that opinion is well founded, the fact remains that it exists for both the defendant and the State. After consideration of the briefs filed on application for rehearing, it is my opinion that this cause should be remanded for a new sentencing hearing after which the trial judge must decide whether Berard should be executed or receive life without parole. I am at a loss to reconcile the present court's finding of the existence of the mitigating circumstances of extreme mental or emotional disturbance, Alabama Code 1975, § 13-11-7(2), and of substantially impaired capacity, § 13-11-7(6), with its contrary finding in Berard v. State, 402 So.2d 1044, 1051 (Ala. Cr.App.1980), on review of Berard's first trial. I adhere to my statement in my concurring opinion that "[e]ven if the existence of these two mitigating circumstances is recognized, the reduction of the punishment from death to life imprisonment without parole is not necessarily required."
Because it is my opinion that upon remand the trial court still retains the responsibility of sentencing Berard to death or to life without parole, I would also remand this cause for further questioning of juror Lunsford. This procedure has been followed in a number of similar cases. Bracewell v. State, 407 So.2d 845, 846-47 (Ala. 1979); Liddell v. State, 287 Ala. 299, 306-08, 251 So.2d 601 (1971); Jackson v. State, 285 Ala. 564, 571, 234 So.2d 579, 586 (1970); Hill v. State, 371 So.2d 60, 63-4 (Ala.Cr. App.1978), cert. denied, 371 So.2d 64 (Ala. 1979). See also O'Bryan v. Estelle, 714 F.2d 365, 407-12 (5th Cir.1983) (J. Buchmeyer's dissent), cert. denied, O'Bryan v. McKaskle, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).
In Cochran v. State [Ms. 6 Div. 886, April 24, 1984] (Ala.Cr.App.1984), this Court held that in pre-1981 death penalty statute cases the burden was on the defendant to prove mitigating circumstances. The majority's finding that Berard had no burden squarely conflicts with our opinion in Cochran.
I adhere to the principles stated in my concurring opinion upon original deliverance in this appeal, and now dissent from both the opinion of the majority on original deliverance and the opinion of the majority on rehearing.