402 So.2d 1044 (1980)
Jerome Vincent BERARD,
v.
STATE.
3 Div. 25.
Court of Criminal Appeals of Alabama.
February 26, 1980.
On Return to Remand June 23, 1981.
Rehearing Denied August 4, 1981.
*1045 John L. Capell, III, of Capell, Howard, Knabe & Cobbs, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., Mary Jane LeCroy, Asst. Atty. Gen., for appellee.
BOOKOUT, Judge.
Murder in the first degree wherein two or more human beings are intentionally killed; sentence: death by electrocution. Section 13-11-2(10), Code of Ala.1975.
The State's evidence proved beyond any reasonable doubt that in the early morning hours of April 15, 1978, eighteen-year-old Jerome Vincent Berard unlawfully, intentionally, and with malice aforethought killed Jeffery D. Smith and John D. Thompson, ages fourteen and sixteen respectively, by shooting them with a .45 caliber pistol at the Skatehaven roller skating rink in Montgomery. Both victims were employed by Skatehaven on the night in question, and Jeffery Smith was the appellant's best friend.
The appellant had been employed at Skatehaven, but had quit two months prior to this incident. According to Mr. Nick Stratas, the owner of Skatehaven, "his words were that he was not going to work any longer. That we had worked him too hard and he desired to quit." On the afternoon of April 14, the appellant told a friend, Tonya Bird, that he planned to rob Nick Stratas and "kill him if possible." He told another friend, Kelly Turner, that "he was going to flatten Nick Stratas' car tire, wait till he was changing it and knock him out from behind and take his money."
By the appellant's own confession, he loaded a .45 pistol at his house, placed it down in his belt, and walked to the Pizza Hut to have a coke. Later, as the appellant was walking up the highway, a female friend drove by and saw him. From the confession:
"[S]he picked me up, you know, rode up the Atlanta Highway and we were talking and she let me out back of the rink. I went down around back and waited until everybody was gone and I went and knocked on the glass doors and Jeff and them came from there, came over and opened the door and he let me into the *1046 place and they were in there cleaning up. I went over to play a few games of pinball and was fixing to close up. I started to walk out the door and I pulled up the slide on the .45 and just started shooting them."
After the appellant emptied the gun into both victims, he placed two more live rounds in the pistol and fired two more shots, one into each victim. He stated that they were moaning and groaning, and he wanted to put them out of their misery. Smith and Thompson suffered five gunshot wounds each.
The appellant offered no explanation for his murderous actions. "I shot my best friend for no reason at all .... I never killed no one in my life, I don't know why I did it .... Jeff never did nothing to nobody, I just shot him dead .... I just kept shooting, shooting and shooting." He stated that he next grabbed the keys to Thompson's car, jumped in the car, and was about to leave when he realized things did not "seem right." He went back inside, "popped open the cash drawer and kicked in some doors, to make it look like it was a robbery or something." He then drove the car away, "ditched it," and walked home.

I
The appellant maintains that the trial court erred in excusing four jurors for cause contrary to the guidelines set out in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We disagree.
In the case sub judice only those prospective jurors were excluded who indicated they would not return the death penalty under any circumstances regardless of the evidence. On no less than four occasions during the qualification of the venire did the trial court instruct the prospective jurors concerning their views on capital punishment:
(1) "The question that is being presented to you now is this: If you have a moral belief which says that you do not believe in capital punishment, if you believe that capital punishment should not be inflicted under any circumstances, if you simply do not believe in capital punishment, you should stand at this time."
(2) "If the fact that you do not believe in the death penalty would keep you from finding the Defendant guilty regardless of the evidence, please stand ...."
(3) "If the fact that you do not believe in the death penalty would keep you from finding the Defendant guilty regardless of the evidence, please remain standing."
(4) "Now, do you feel like that since you do not believe in capital punishment, regardless of what the evidence would be, do you feel like you could render a verdict of guilty? ....
"If you feel that you could not, just raise your right hand ...."
In addition, it was carefully explained that under Alabama's capital felony statute the only punishment which the jury could impose would be death if the appellant was found guilty.
In response to the court's instructions, thirteen prospective jurors stood. Each juror was questioned individually to make sure he understood the instructions and to ascertain his individual convictions regarding the death penalty. Of the thirteen who had originally stood, only four stated unequivocally that they "could not pronounce guilt under those circumstances." Those four were challenged for cause. The remaining nine were not. We hold as a matter of law that the challenges were proper. Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); Witherspoon, supra. See also: Liddell v. State, 287 Ala. 299, 251 So.2d 601 (1971).

II
The appellant contends that the trial court erred to reversal in allowing color photographs and photographic slides of the victims to be shown to the jury and in admitting into evidence the shirts of the two victims showing blood stains and bullet holes. Appellant argues that such evidence *1047 was repetitious and that its cumulative effect was to inflame the jury. A brief discussion of that evidence is appropriate.
Through the testimony of five police officers and a state toxicologist, thirty-nine photographs were admitted into evidence. Approximately thirty of those photographs were of the two victims. A slide presentation of approximately ten slides by the state toxicologist and approximately thirty slides by one of the police officers was also made before the jury. The presentation utilized by the toxicologist was to facilitate his testimony explaining the victims' cause of death. The presentation made by the police officer was to expedite his testimony explaining the appellant's movements at the time he committed the offense. At least nine of those slides were of the scene and the two bodies. The slides were not admitted as exhibits, but were marked for the record.[1] The two shirts, one belonging to each victim, were introduced to prove the number of wounds and to establish the approximate distance of the pistol at the time of discharge.
Beginning with the shirts, the supreme court in Flannagin v. State, 289 Ala. 177, 266 So.2d 643 (1972), stated:
"It is a long established rule of this State that demonstrative evidence, such as clothing worn by deceased at the time of the killing, is admissible if it tends to shed light on any material inquiry, even though such evidence is only cumulative of other evidence and tends to inflame the jury. Barbour v. State, 262 Ala. 297, 78 So.2d 328; Ray v. State, 253 Ala. 329, 45 So.2d 4. The rule regarding admissibility was set forth with clarity in Rollings v. State, 160 Ala. 82, 86-88, 49 So. 329, 331 as follows:
"`The clothing of deceased, as well as that of the accaused, ... (sic) are usually held admissible on trials of homicide. There are only a very few cases in which they have been excluded, when offered as evidence for the inspection of the jury, if tending to elucidate the transactions, to identify any of the parties, to connect the accused with the crime, or to show the character of the wound, motive or intent of the killing, or degree of the crime whether the killing was in self-defense or not. If such objects tend to corroborate or disprove, illustrate or elucidate, any other evidence, they are admissible * * *.
"`The wearing apparel of deceased, showing the location of the bullets, the character and nature of the wound, the blood stains, etc., were properly admissible under the rules stated above, and it is no reason to exclude them that these matters might be shown by other evidence, or that these objects might prejudice the jurors. * * *' (Emphasis supplied.)"
In the instant case the victim's clothing clearly tended to show the character, location, and nature of the fatal wounds. Thus, the shirts were properly admitted into evidence. Jones v. State, Ala.Cr.App., 362 So.2d 1303 (1978); Gould v. State, Ala.Cr. App., 332 So.2d 402 (1976).
With respect to the photographs and slide presentations of the victims, we find no merit in appellant's argument. As is stated in Gamble, McElroy's Alabama Evidence, § 207.01(2), (3d ed. 1977):
"The basic question to be asked in deciding the admissibility of a photograph of a victim, just as with any other demonstrative evidence, is whether it has a reasonable tendency to prove or disprove some material fact in issue. This decision is left largely to the sound discretion of the trial judge ...."
The trial judge's discretion is not reviewable except for gross abuse. McKee v. State, 253 Ala. 235, 44 So.2d 781 (1949); Cook v. State, 52 Ala.App. 159, 290 So.2d 228 (1974). We have carefully examined the photographs which were admitted and have considered the impact of the slide presentation. We find no abuse of discretion in this case. *1048 Lewis v. State, Ala.Cr.App., 339 So.2d 1035 (1976), cert. denied, Ala., 339 So.2d 1038.

III
The appellant contends that the trial court admitted his taped and signed confession, taken on April 16 at 1:31 p. m., in violation of his Fifth and Fourteenth Amendment rights against self-incrimination. We have carefully examined appellant's confession and the surrounding circumstances at the time it was made and are unable to agree with appellant.
Prior to his interrogation, appellant was properly advised of his Miranda rights and signed a waiver form. He signed the waiver form without hesitation and only after he had read it himself. The predicate of voluntariness was clearly established. Before the jury heard evidence of the confession, which included the Miranda warnings and voluntariness predicate, the trial judge on voir dire made a preliminary determination of the voluntariness of appellant's confession. See: Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).
After appellant's taped confession was transcribed, he was given an opportunity to read and sign it. He initialed each page. During the time he was interrogated, the appellant did not ask for an attorney, nor did he indicate in any manner that he did not want to talk to the officers. Two officers were present throughout the questioning. The actual questioning was done by one officer; the other officer merely being present as a witness. In the confession itself, the appellant stated that he understood his rights and that he understood he did not have to answer any questions he did not want to answer.
Approximately two-thirds of the way through the interrogation, the questioning officer informed the appellant of the results of the ballistics test which indicated the appellant's gun fired the fatal bullets. He further informed appellant that he had statements from appellant's friends to whom he had previously made incriminating statements. The appellant was not misled or misinformed in any way. It was during this time that he confessed to the murders.
A full transcription of that exchange would serve no purpose; however, taking excerpts from the statements made by the questioning officer to the appellant, we note the following:
"I'm going to shoot straight with you, And I want you to shoot straight with me....
. . . .
"And I think it's time that you [and] me kind of settle down here and had a man to man discussion about the true facts as happened .... You're in a lot of trouble.... Now you have killed your best friend, son. And it's time you told somebody. If you don't you are going to go slam crazy. We're going to find you hanging out of a tree or something, son.
. . . .
"Now let's lay it on the line right here, right now and get this stuff over with and try to get you some help because I, like you said, I do believe you need a psychiatrist. I think you need some help. But you can't get it son, fighting it .... [Y]ou're going to have to get right with yourself and get right with your God and get right with this whole outfit here .... I want you to tell me exactly what happened.
In context, the statement that the appellant would be found "hanging out of a tree or something" was not a threat that the officers would do him harm. Clearly, it was only a statement to the effect that if the appellant kept his guilt bottled up inside him it was likely he would go crazy and do himself harm. Thus, taken in full context, the officer was merely urging appellant to clear his conscience and his mind by telling what happened to his best friend.
It cannot be disputed that the questioning officer wanted the appellant to confess his guilt. However, at the evidentiary hearing outside the presence of the jury, the trial court held that "the constitutional rights of the defendant were honored. No coercion was used, no threat or force of any threat was used, and the statement is admissible." *1049 From the facts before us, we cannot say as a matter of law that the trial court's ruling was erroneous.
Even though the appellant was eighteen years of age at the time of the offense and subsequent confession, we have applied the factors set out in West v. United States, 399 F.2d 467 (5th Cir. 1968) which pertain to confessions by a juvenile and are convinced appellant's confession was understandingly and voluntarily made.[2] We hold, therefore, that under the totality of the circumstances the admission of appellant's confession was proper. A confession of guilt by its nature is prejudicial, and its voluntariness is subject to utmost scrutiny especially in death penalty cases. The question we must always decide is whether the methods employed to obtain the confession were violative of constitutional safeguards and guarantees. We find no such violation here.

IV
On motion of appellant's counsel, the trial court issued an order on May 4, 1978, committing appellant to the state mental hospital in Tuscaloosa for evaluation pursuant to §§ 15-16-20-21, Code of Ala.1975. On June 20 he was found to be competent to stand trial by the forensic evaluation board of that hospital and was returned to Montgomery for that purpose.
During the course of the trial, there was considerable testimony concerning the appellant's mental condition. Both expert and lay witnesses testified on behalf of the State and the defense as to the appellant's sanity at the time of the commission of the crime. Without setting out the testimony of each witness, it is sufficient to say there was a conflict in the evidence. We find, however, that the testimony of the witnesses for the appellant did not constitute a "preponderance of the evidence" that the appellant was legally insane at the time of the commission of the crime. In order to overcome the presumption of sanity, the appellant must prove by a preponderance of the evidence that he was in fact insane when the crime was committed. Christian v. State, Ala., 351 So.2d 623 (1977); Woods v. State, Ala.Cr.App., 364 So.2d 1178 (1978), cert. denied, Ala., 364 So.2d 1186. The determination against appellant of that issue was clearly within the province of the jury and was fully supported by the State's evidence.

V
Several questions are raised concerning the trial court's order after the sentencing hearing was conducted. For the sake of clarity, we set forth the pertinent parts of the court order sentencing the appellant to death.
"This Court, having conducted a hearing pursuant to law to determine whether or not the Court will sentence the above defendant to death or to life imprisonment without parole; and the Court having considered the evidence presented at the trial and said sentence hearing; the Court makes the following findings of fact:
"The Court first considers the aggravating circumstances:
"(a) The homicides committed were brutal,
"(b) That no evidence has been presented negating the testimony that the defendant went to the scene of the crime with the intent to commit a robbery and, if necessary, a murder,
"(c) There is an absence of any provocation.
"The Court considers the mitigating circumstances:
"(a) There is no criminal record,
"(b) There is evidence of some emotional instability, however not to the extent to excuse or justify the present criminal conduct,
"(c) The defendant is of a young age.

*1050 "(d) The Court finds that while there is some emotional instability, there is evidence that the defendant did then and now does appreciate the consequence of his conduct.
"As an aside, the Court wishes to comment upon the high professional skill displayed by defense counsel in this most difficult cause.
"The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the aggravating circumstances outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted."
The trial court based the death sentence on three aggravating circumstances, none of which is to be found in the capital felony statute. Section 13-11-6, Code of Ala.1975, lists the only aggravating circumstances that may be considered by a court in fixing the death penalty. Had the trial judge merely used that code section as a check list in making his findings, a new sentencing hearing would in all probability have been unnecessary. A basic rule of review is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation. This is especially true in death penalty cases. Ex parte Clements, Ala., 370 So.2d 723 (1979); Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). Penal statutes are to reach no further in meaning than their words. Clements, supra; Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952). As this court held in Keller v. State, Ala.Cr.App., 380 So.2d 926 [1979], "An inclination to gradually broaden the scope of aggravating circumstances beyond the strict wording of the statute will eventually lead to an unconstitutional application of the capital felony statute."
A discussion of the supposed aggravating circumstances listed by the trial judge is therefore necessary:
(1) That the homicides were "brutal" fails to conform to § 13-11-6(8) which requires a finding that the crime was "especially heinous, atrocious or cruel." (Emphasis supplied.) The crime was in fact brutal, but the statute requires more. We have no doubt that had the trial judge applied the wording of subsection (8) he could have supported a proper finding thereunder by the fact that the appellant, after firing all the bullets into the two boys, reloaded the weapon and went back and shot each one again. We upheld a similar circumstance in Morrison v. State, Ala.Cr.App., 398 So.2d 730 [1979; after remandment, Ms. November 20, 1979]. The trial judge made a proper finding of fact in that case setting out the reason for his decision.
(2) As to circumstance (b), we assume the trial judge was attempting to invoke § 13-11-6(4) by finding that no evidence was presented to negate the fact that the appellant went to the scene of the crime "with the intent to commit a robbery and, if necessary, a murder." However, to come within that section of the statute, the trial judge would have had to find that the capital felony was in fact committed during the course of a robbery, attempted robbery, or in flight therefrom.
The evidence reveals that the day before the crime appellant stated an intent to rob and possibly kill Nick Stratas. When he arrived at Skatehaven, Stratas was not there. He neither robbed nor killed Stratas. There is no evidence in the record of an actual robbery. In the appellant's confession, he stated that after the murders he went back to the scene to make it appear as if a robbery had taken place; that, for the obvious purpose of shifting suspicion away from himself. Additionally, the trial court's finding that there "was no evidence" to refute the robbery was inaccurate. The State's own evidence (the confession) was contrary to that finding by the trial judge. In any event the evidence must show more than that the appellant had robbery on his mind. The statute requires positive evidence that any actual or attempted robbery was committed in order to support a finding pursuant to subsection *1051 (4), supra. The trial judge did not find that there was a robbery, only that no evidence was produced to negate the appellant's intent. Therefore, the trial court's finding does not constitute a valid aggravating circumstance within the wording of the statute.
(3) An absence of provocation is likewise not an aggravating circumstance listed in the capital felony section. Such a finding has no more legal effect than a finding that the crime was "unnecessary" which was rejected in Colley v. State, Ala.Cr.App., 405 So.2d 374 (1979).
As to the mitigating circumstances, the trial court's findings (a) and (c) thereunder are contained in § 13-11-7(1), (7), and are thus proper. However, the appellant urges that the trial court could have found as mitigating circumstances those contained in subsections (2) and (6). Section 13-11-7(2) reads as follows:
"The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance."
Section 13-11-7(6), in pertinent part, likewise reads:
"The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."
The appellant further maintains that it was error for the trial court to have commented in subsections (b) and (d) of its findings that the extent of his emotional instability did not "excuse or justify the present criminal conduct," and that he "did then and now does appreciate the consequence of his conduct." We disagree.
Both of the above subsections of the statute are concerned with the degree of the accused's mental disability: "extreme mental or emotional disturbance" in (2) and "capacity ... substantially impaired" in (6). The trial court's findings in subsections (b) and (d) were tantamount to a holding that the degree of disability necessary to support those mitigating circumstances was lacking. The trial court's findings on those points were supported by the evidence, thus distinguishing this case from Lewis v. State, Ala. Cr.App., 380 So.2d 970 (1979). Again, however, the safer practice would have been for the trial judge to simply follow the verbiage of the statute in negating aggravating circumstances rather than devising his own tests.
We have carefully searched the record for any error prejudicial to the appellant pursuant to §§ 12-22-240, -241, Code of Ala. 1975, and the "plain error rule," Rule 45A, Alabama Rules of Appellate Procedure. After due consideration of the record, briefs, and arguments, we find no reversible error. We conclude that the appellant received a fair trial, and the conviction should be affirmed. However, due to deficiencies in the sentencing order discussed above, this cause must be remanded with directions that a new sentencing hearing be held. As the trial judge who conducted the original hearing is no longer holding that office, the hearing must necessarily be conducted by another circuit judge. Such a procedure will necessitate the trial judge reviewing the entire evidence presented at the trial before holding the hearing or making his findings. The appellant and his counsel must be present and be afforded an opportunity to present any matter in mitigation pursuant to Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Cook v. State, Ala., 369 So.2d 1251 (1979). In answer to the instant remand, a full court reporter's transcript of such proceedings must be made and forwarded to this court along with the trial court's order which must include findings of fact as well as aggravating and mitigating circumstances, pursuant to § 13-11-4 et seq., Code of Ala.1975.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
PER CURIAM.
Reversed and remanded on authority of Beck v. State, 396 So.2d 645 (Ala.1981).
REVERSED AND REMANDED.
All the Judges concur.
NOTES
[1] Although the slides were not formally admitted, the fact that they were used in connection with the giving of testimony made them evidence in the case. Murrell v. State, Ala.Cr. App., 377 So.2d 1102 (1979); Smith v. State, Ala.Cr.App., 344 So.2d 1239, cert. denied, Ala., 344 So.2d 1243 (1977); Kabase v. State, 31 Ala.App. 77, 12 So.2d 758 (1943).
[2] Pursuant to Alabama law at the time of the offense (and confession), appellant was eighteen years old and was not a "child" within the legal meaning of that word, § 12-15-1(3), Code of Ala.1975. The special provision of § 12-15-67 therefore would not apply. Ex parte State (In re Bracewell v. State), Ala., 401 So.2d 123 [1979].