Jerome BOWDEN, Petitioner-Appellant,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.

No. 83–8426.

United States Court of Appeals, Eleventh Circuit.

July 23, 1985.

Nelson Jarnagin, August Seimon, Atlanta, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM [*], Senior Circuit Judge.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

TJOFLAT, Circuit Judge:

This case is before us on remand from the Supreme Court with instructions to reconsider our panel decision, *Bowden v. Francis*, 733 F.2d 740 (11th Cir.1984), in light of the Court's recent holdings in *Ake v. Oklahoma*, —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We have reconsidered our decision and find it to be entirely consistent with *Ake*. Accordingly, our affirmance of the district court's denial of habeas corpus relief remains undisturbed.

### I.

Jerome Bowden is a Georgia death row inmate. Bowden stands convicted of the

[*] Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-      tion.

crimes of murder (for which he received the death sentence), burglary, armed robbery, and aggravated assault, all committed on October 11, 1976, as he and an accomplice were burglarizing a Columbus, Georgia residence. Prior to his trial in state court, Bowden's attorney filed a special plea of insanity and moved the court for the appointment of a psychiatrist to render an opinion as to both his competency to stand trial and his mental state at the time of the offense. The court denied the motion for psychiatric evaluation, and Bowden withdrew his special plea of insanity. Thereafter, he was tried by a jury, found guilty as charged, and sentenced to death. After exhausting his state remedies,[1] Bowden petitioned the district court for a writ of habeas corpus. The writ was denied, and Bowden appealed.

In his appeal, Bowden presented several federal constitutional claims. *Ake v. Oklahoma* is relevant to two of them: the claim that the state trial court failed to order a psychiatric examination for the purpose of determining Bowden's competence to stand trial, in violation of the due process clause of the fourteenth amendment, and the claim that the trial court's refusal to appoint a psychiatrist to examine Bowden precluded him from presenting evidence of mental illness in mitigation of sentence at the sentencing phase of his murder trial, in violation of the due process clause of the fourteenth amendment.[2]

We read *Ake* to require as a matter of due process that

when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

— U.S. at ——, 105 S.Ct. at 1097. In addition, a State's refusal to provide the defendant psychiatric assistance in presenting mitigating evidence at his sentencing proceeding, where the State presents psychiatric evidence against the defendant, also violates due process. *Id.* at ——, 105 S.Ct. at 1097. We do not, however, read *Ake* as counselling a result different from that we reached earlier.[3] Bowden makes no claim here that he was denied the assistance of a psychiatrist in determining whether to present an insanity defense;[4]

---

**1.** These proceedings are enumerated in our earlier decision. *Bowden,* 733 F.2d at 744–45.

**2.** Bowden's additional claims included: (1) that the trial court prevented his attorney from arguing Bowden's mental condition to the jury as a mitigating circumstance during the sentencing phase of the trial, in violation of the eighth and fourteenth amendments; (2) that the prosecutor denied him due process of law, in violation of the fourteenth amendment, by failing to give him clear notice of the prior convictions the State planned to use against him as an aggravating circumstance at the sentencing phase of his trial; (3) that the trial court denied him his sixth and fourteenth amendments right of confrontation by allowing the prosecutor to introduce the confession of an accomplice into evidence without calling the accomplice to the witness stand to testify; and (4) that his lead trial counsel rendered ineffective assistance, in violation of the sixth and fourteenth amendments, in failing to interview prosecution witnesses prior to trial and in failing to unearth readily available evidence of Bowden's low intelligence for use in mitigation during the sentencing phase of Bowden's trial.

**3.** The Supreme Court's decision in *Ake,* which focuses on the State's responsibility to provide the defendant with psychiatric assistance in presenting an insanity defense or evidence in mitigation of sentence, leaves intact the Court's prior holdings concerning competency to stand trial, which require the trial court, when presented with a bona fide doubt as to the defendant's competency, to conduct a hearing thereon. *See Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *Hance v. Zant,* 696 F.2d 940, 948 (11th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). In our initial decision in this case, after careful consideration of the record, we agreed with the district court's finding that the evidence presented to the state trial court was insufficient to raise such a "bona fide doubt." 733 F.2d at 747. *Ake* has no effect on this finding.

**4.** In conjunction with a special plea of insanity, Bowden's attorney moved the court for appointment of a psychiatrist to determine Bowden's competency to stand trial as well as his mental state at the time he committed the crimes. At the evidentiary hearing the court convened to

therefore, *Ake*'s first holding, that speaks to such a claim, is inapplicable. *Ake*'s second holding is similarly inapplicable; as Justice O'Connor noted in her dissent to the Court's remand order, —— U.S. ——, ——, 105 S.Ct. 1834, 1834–35, 85 L.Ed.2d 135, Bowden never requested the state trial court to appoint a psychiatrist for the purpose of presenting mitigating evidence at sentencing.[5] And, even if we were to read Bowden's habeas petition as alleging the denial of psychiatric assistance in developing an insanity defense, we would still find no constitutional error.

■ *Ake* requires a defendant to make some showing that sanity at the time of the offense will be a significant factor at trial in order to trigger the State's responsibility to afford him the assistance of a psychiatrist. The record here discloses no such showing. Our earlier decision details defense counsel's attempt, during the evidentiary hearing on Bowden's motion for the appointment of a psychiatrist, to show that Bowden was incompetent to stand trial. *Bowden*, 733 F.2d at 744. Bowden's sister and niece testified that he would sit on the bed and rock back and forth for hours at a time while listening to the radio. On other occasions he would "cuss out" the children in the family. His sister also testified that Bowden's mother, in response to an earlier run-in with the law, attempted to have him examined by a psychiatrist. Bowden's lead

trial attorney testified that he had difficulty communicating with Bowden but acknowledged that Bowden had cooperated with him in all other phases of the case. The trial court concluded that this evidence, and defense counsel's representations, demonstrated no need for the appointment of a psychiatrist.

Bowden's counsel did not challenge the correctness of the court's ruling. As counsel explained in testifying before the state habeas corpus court, he did not question the trial court's refusal to appoint a psychiatrist because "on the basis of the information we were able to provide the Court and from the witnesses we were able to come up with and the facts we were able to provide, we didn't feel as though the Court had erred in denying the motion." The record fully supports counsel's explanation and leads us to conclude that Bowden failed to make any showing that the question of insanity was to be a significant factor at trial.

As we have noted, Bowden chose not to interpose the insanity defense at the guilt phase of his trial. His counsel withdrew his special plea of insanity, not because the motion for the appointment of a psychiatrist was denied, but because he "didn't feel at the time that [the defense] had come forward with enough evidence to warrant" proceedings on that plea.[6] At trial, Bow-

---

consider the motion, however, Bowden's attorney focused mainly on the issue of competency to stand trial; he proffered little if any evidence on the mental state of the defendant at the time of the offense and gave no indication that he wished to pursue an insanity defense. This is hardly surprising given that counsel chose not to raise the insanity defense, believing instead, as the record shows, that the best defense strategy was to keep Bowden's confessions out of evidence and, failing that, to convince the jury that they were the products of improper police interrogation. The provision of psychological assistance during the guilt phase of the trial was not an issue presented to the habeas court below and, consequently, it is not properly before this court now.

5. The Court emphasized the inequity of denying a defendant access to psychiatric evidence which may rebut the State's psychiatric evidence in the sentencing proceedings. In *Ake*,

the State presented testimony concerning the defendant's future dangerousness, an aggravating sentencing factor under Okla.Stat. Tit. 21, § 701.12(7) (1981). In the case at hand, Georgia law made the recommendation of the death penalty contingent on the existence of aggravating circumstances. Ga.Code Ann. § 27–2534.1 (1978). Bowden was charged with murder while engaged in an armed robbery, another capital felony, and an aggravating circumstance. *Id.* at (b)(2). Unlike the sentencing situation in *Ake*, Bowden's prosecutor had no need to present psychiatric evidence to show an aggravating factor, and he presented none. The dangers and inequities which concerned the Court in *Ake* consequently did not exist.

6. Defense counsel candidly admitted, before the state habeas court, that the motion was filed in part as a delay tactic to provide more time to prepare a defense.

den showed no signs of mental disturbance. As we observed in our earlier decision, he testified coherently on his own behalf, withstanding a vigorous and lengthy cross-examination. *Bowden,* 733 F.2d at 748.

In *Ake,* the Court was presented with a series of facts clearly indicating that sanity would be not only a significant factor at trial, but the sole issue in the case.

For one, Ake's sole defense was that of insanity. Second, Ake's behavior at arraignment, just four months after the offense, was so bizarre as to prompt the trial judge, *sua sponte,* to have him examined for competency. Third, a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed. Fourth, when he was found to be competent six weeks later, it was only on the condition that he be sedated with large doses of Thorazine three times a day, during trial. Fifth, the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that this mental illness might have begun many years earlier.

*Ake,* —— U.S. at ——, 105 S.Ct. at 1098. No such factors existed in Bowden's case; there is no indication that he presented the trial judge with any evidence suggesting that sanity would play a significant role in the trial. Where a defendant offers "little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision." *Caldwell v. Mississippi,* —— U.S. ——, —— n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985).[7]

In summary, since Bowden made no showing that sanity at the time of the offense would be a significant factor at trial and no request for a psychiatrist to aid in the presentation of mitigating evidence at sentencing, we view our previous

decision in this case as entirely consistent with *Ake.* The judgment of the district court is, accordingly,

AFFIRMED.

---

**7.** In *Caldwell,* the petitioner, who had been sentenced to death, argued that the State's refusal to appoint a criminal investigator, a fingerprint expert, and a ballistics expert violated his due process rights. Noting the absence of a showing of reasonableness or need, the Court rejected this challenge.